# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAMUS REILLY,<br>    Plaintiff,<br><br>v.<br><br>UPPER DARBY TOWNSHIP,<br>    Defendant. | CIVIL ACTION<br><br>NO. 2:09-cv-02465-WY |

**Memorandum**

YOHN, J.                                                                                                                                                                                                                                                 January 6, 2010

Plaintiff, Shamus Reilly, has sued his former employer, the Upper Darby Township ("Upper Darby"), for discrimination pursuant to the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101-12213 (Count I), and the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. Stat. §§ 951-963 (Count II). He claims that although he suffers from a progressive muscular degenerative disease he could still perform his job as a police officer, but that Upper Darby would not accommodate him. Upper Darby moves to dismiss the complaint, claiming that he failed to file a timely charge of with the Equal Employment Opportunity Commission (the "EEOC"), a prerequisite to his ADA claim, and that he filed the instant suit before the one-year period for conciliation required by the PHRA expired. Reilly argues that the time for him to file his charge with the EEOC should be tolled because he never saw notices posted about his rights under the ADA. I conclude that he should have the opportunity to pursue discovery on this issue. Reilly does not, however, dispute Upper Darby's argument as to the PHRA. I will therefore deny the motion as to Count I but will grant it as to Count II, without prejudice to Reilly's right to reinstate his PHRA claim if it is not resolved after completion of the administrative process.

I.     **Factual and Procedural Background**

Reilly claims that despite his disability he is able to perform the essential duties of his job and that, regardless, reasonable accommodations are available at minimal cost. (First Am. Compl. ¶¶ 36, 39, 41, 43.) He seeks reinstatement, back pay, lost benefits, interest, compensatory and punitive damages, a permanent injunction enjoining future discrimination, and costs and attorneys' fees. (Id. at ¶¶ 6-8.) Accepting all well-pleaded facts in the complaint as true, as I must when considering a motion to dismiss, the facts of Reilly's claims are as follows.

Reilly worked as an Upper Darby police officer for more than a decade. (Id. ¶ 10.) During that employment, he was diagnosed with a muscular degenerative disease. (Id. ¶ 11.) The disease has a slow progression, such that most patients can work for many years after the onset of symptoms. (Id. ¶¶ 12-14.) In June 2007, as an accommodation for leg weakness and an impaired ability to walk, Upper Darby assigned Reilly to the Operations Room of its police department. (Id. ¶¶ 15-17.)

On August 3, 2007, Reilly underwent a fitness-for-duty health examination. (Id. ¶ 19.) The physician who examined him reported that Reilly was fit to continue working in the Operations Room. (Id. ¶ 19.) Nevertheless, the Superintendent of Police (1) requested that a police captain prepare a list of alternative jobs suitable for Reilly and (2) ordered a meeting between Reilly and Upper Darby's Chief Administrative Officer, Tom Judge Jr. (Id. ¶¶ 20-22.) At this meeting, which took place on October 4, 2007, Reilly learned that he would no longer be allowed to work in the Operations Room. (Id. ¶ 23.) On October 14, 2007, Upper Darby placed Reilly on involuntarily medical leave. (Id. ¶¶ 24, 33.)

Upper Darby later informed Reilly that the Operations Room assignment was meant only as a light duty position for employees whom Upper Darby expected to return to full duty. (Id. ¶ 25.) Reilly alleges, however, that the Operations Room is actually staffed by officers with no disabilities and by part-time employees. (Id. ¶¶ 26-28.) Upper Darby refused to discuss alternative positions or accommodations for Reilly and refused to participate in the interactive accommodation process. (Id. ¶¶ 29-31.) Based on the collective bargaining agreement that covered police officers like Reilly in Upper Darby, Reilly filed a grievance over being placed on leave. (Id. ¶¶ 29-31.) On October 14, 2008, after an arbitrator upheld the decision to place Reilly on leave, Upper Darby terminated Reilly's employment. (Id. ¶ 35.)

In January 2009, more than 300 days after Upper Darby placed him on involuntary medical leave, Reilly filed a charge with the EEOC alleging that Upper Darby violated the ADA. (Id. ¶ 35b.)[1] Reilly cross-filed this charge with the Pennsylvania Human Relations Commission (the "PHRC"). (Id. ¶ 8.) The EEOC notified Reilly of his right to sue and on June 1, 2009, within 90 days of his receipt of that notice, he filed a complaint in this court. (Id. ¶ 9.) On July 23, 2009, he filed a First Amended Complaint in which he alleged that throughout the time period relevant to his claims he "saw no Township postings or other notices to employees of the police force of their rights under the ADA" or "of time constraints for filing charges with the EEOC." (Id. ¶¶ 35a-35b1.)

## II. Standards Under Rule 12(b)(6)

The Third Circuit recently clarified the two-part analysis a court should use to consider a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Fowler v. UPMC

---

[1] This reference is to the second of two paragraphs that Reilly numbered "35b" in the First Amended Complaint. To avoid confusion, I will hereinafter refer to the first of these paragraphs as 35b1 and the second as 35b2.

Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009). First, the court should separate the factual and legal elements of the claim. Id. The court may disregard any legal conclusions but must accept all of the complaint's well-pleaded facts as true. Id. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. Id. "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949-50 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.[2]

---

[2] Generally, the only documents a court may consider at this stage – without converting the motion dismiss to a motion for summary judgment – are those documents attached to the complaint. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Nevertheless, Upper Darby included with its motion to dismiss several documents that were not attached to Reilly's First Amended Complaint. Upper Darby argues that the court need not convert the motion to one for summary judgment because Reilly's claims are based on these documents and because the documents belong to a government agency – the EEOC – and are therefore matters of public record. (Def.'s Mem. 4.) It is not necessary, however, for the court to consider any of these documents at this stage. As explained *infra*, Reilly's First Amended Complaint sufficiently contains the relevant allegations. Accordingly, it is also unnecessary for the court to address Reilly's secondary arguments, such as his request for additional discovery pursuant to Fed. R. Civ. P. 56(f) and his request for leave to file a Second Amended Complaint.

In any event, consideration of the documents Upper Darby attached to its motion would not have required the court to convert the motion to one for summary judgment because the documents are integral to and explicitly relied upon in the First Amended Complaint. In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (court may consider a "document *integral to or explicitly relied* upon in the complaint" without converting a motion to dismiss to a motion for summary judgment) (emphasis in original; quotation and citations omitted). Exhibit 1 is the charge of discrimination that Reilly filed with the EEOC, which Reilly references in paragraphs 8 and 35b2. Exhibit 2 is the EEOC's notice of right to sue, which Reilly references in paragraph 9. Exhibit 3 is the August 3, 2007, medical report regarding Reilly's fitness-for-duty exam, which Reilly references in paragraphs 19 and 23. Exhibit 4 is the opinion of the arbitrator denying Reilly's grievance, which Reilly references in paragraph 35. In addition, Reilly does not dispute the authenticity of these documents. Pension Ben., 998 F.2d at 1196. Furthermore, Upper Darby is correct that the court could have considered the documents that were filed with or issued by the EEOC because such documents are matters of public record. Id.

**III. Discussion**

**A. Count I: The ADA**

Before an aggrieved party may properly file a discrimination claim under the ADA in federal court, he or she must meet a number of procedural obligations. See 42 U.S.C. §§ 12117(a) and 2000e. For example, he or she must file a charge with the EEOC within 300 days of the alleged act of discrimination if, as here, he or she also instituted proceedings before a state agency that has authority to grant relief in such a matter, such as the PHRC. Ruehl v. Viacom, Inc., 500 F.3d 375, 383 (3d Cir. 2007) ("'In deferral states, such as Pennsylvania, the charge must be filed within 300 days of the allegedly illegal act.'") (quoting Seredinski v. Clifton Precision Prods. Co., 776 F.2d 56, 61 (3d Cir. 1985) (a 300-day rather than a 180-day limitations period applied because the PHRC has overlapping jurisdiction with the EEOC and, therefore, the EEOC must afford the PHRC a reasonable time to remedy the violation alleged)); 42 U.S.C. § 2000e-(5)(e)(1). If a plaintiff fails to meet these procedural obligations, the court must dismiss the action as untimely. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108-09 (2002). Here, Reilly did not file his charge with the EEOC until January 2009, more than 300 days after October 14, 2007, when Upper Darby placed him on involuntary medical leave.[3]

An employer, however, also has obligations under the ADA, such as the requirement to post notices of fair employment practices in "conspicuous places," including descriptions of the filing requirements of the ADA. 42 U.S.C. § 2000e-10(a). Furthermore, the time period in

---

[3] For the purposes of a claim of unlawful discharge, the limitations period is triggered on the date when an employer establishes its official position to terminate an employee and communicates that position to the affected employee. Del. State Coll. v. Ricks, 449 U.S. 250, 258-59, 262 (1980). Reilly does not dispute that the limitations period would have begun to run by at least October 14, 2007, when Upper Darby placed him on involuntary medical leave, rather than October 14, 2008, when he was terminated.

- 5 -

which an employee must file a charge with the EEOC is not a jurisdictional issue but rather is in the nature of a statute of limitations, and is therefore "subject to equitable modifications, such as tolling." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994). Under the doctrine of equitable tolling, an employer's failure to post the required ADA notices in "conspicuous places" tolls the limitations period, at least until such time as the aggrieved person seeks out an attorney or acquires knowledge of his rights to be free from discrimination. Hammer v. Cardio Med. Prod., 131 F. App'x 829, 831 (3d Cir. 2005); 42 U.S.C. § 2000e-10(a); see also Bonham v. Dresser Indus., 569 F.2d 187, 193 (3d Cir. 1977) (employee raised sufficient questions of fact to entitle him to opportunity to demonstrate right to equitable tolling because he asserted in an affidavit that he never saw any notices posted regarding his rights to be free of discrimination).

Here, Reilly has alleged that during the relevant time period he did not see any of the required notices posted in his workplace. (First Am. Compl. ¶ 35a-35b1.) Such allegations are sufficient at this stage to raise a reasonable inference that Upper Darby failed to meet its obligation to post such notices in conspicuous places, even though discovery may later reveal the contrary. Hammer, 131 F. App'x at 832; see also Iqbal, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In addition, no factual allegations identified by Upper Darby suggest that Reilly otherwise had notice of the EEOC limitations period at any time before he filed his EEOC charge.[4] See Bonham, 569 F.2d at 193

---

[4] The period of equitable tolling, however, might cease at any time Reilly had access to some means of discovering basic information about his rights under the ADA, such as through any legal or union representation he may have received with regard to the grievance he filed pursuant to his collective bargaining agreement. Zellars v. Philadelphia School Dist., No. 95-1603, 1997 WL 230803, *1 (E.D. Pa. May 1, 1997) (equitable tolling ceased when plaintiff's

("Failure to post the required notice will toll the running of the [limitations] period, at least until such time as the aggrieved person seeks out an attorney or acquires actual knowledge of his rights . . . ."). Accordingly, Reilly should have the opportunity to pursue discovery regarding whether Upper Darby met its obligation to post conspicuous notice of its employees' rights under the ADA. Hammer,131 F. App'x at 832; Bonham, 569 F.2d at 193. I will therefore deny Upper Darby's motion to dismiss as to Reilly's claim under the ADA, Count I.[5]

### B. Count II: The PHRA

The Pennsylvania Supreme Court has explicitly held that a discharged employee cannot file a PHRA claim in the judicial system without first exhausting administrative remedies. Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 919-20 (Pa. 1989). Once the employee files an administrative complaint with the PHRC, the PHRC has exclusive jurisdiction over the claim for a period of one year, in order to attempt conciliation. 43 Pa. Stat. § 962(c)(1); Burgh v.

---

union provided him legal representation for arbitration hearing regarding his grievance and he raised questions during that hearing about his allegations of discrimination); see also Cruce v. Brazosport Indep. Sch. Dist., 703 F.2d 862, 864 (5th Cir. 1983) (facts "strongly suggest[ed] that plaintiff had ample opportunity to learn of the existence of the EEOC and its procedures" when plaintiff was represented by his union representative at a grievance hearing eleven months before he filed his EEOC charge). Based on the limited facts before the court, Reilly's EEOC charge cannot be said at this stage to be untimely even though he previously arbitrated a grievance concerning the same claims. Reilly filed his charge with the EEOC in January 2009, within 300 days of the arbitrator's October 14, 2008, decision concerning his grievance. Discovery may reveal, however, whether Reilly had legal or union representation for his grievance more than 300 days before he filed his EEOC charge and, if so, whether that representation provided access to basic information concerning his rights to be free from discrimination.

[5] Upper Darby cites Kozlowski v. Extendicare Health Serv., Inc., No. 99-4338, 2000 WL 193502, *3 (E.D. Pa. Feb. 17, 2000), in support of its argument that Reilly failed to exhaust his administrative remedies under the ADA, but that case is inapposite. In Kozlowski, the plaintiff's failure to cooperate with the EEOC and its investigation of her charge of discrimination constituted a failure to exhaust her administrative remedies and therefore was fatal to her Title VII claim. Id. Here, in contrast, Upper Darby has not argued that Reilly failed to cooperate with the EEOC.

Borough Council of the Borough of Montrose, 251 F.3d 465, 471 (3d Cir. 2001); Clay, 559 A.2d at 920 ("[t]he legislative history of section 962(c) shows that the Legislature intended that the PHRC should have exclusive jurisdiction of a complaint alleging violations under the PHRA for a period of one year"). Applying this binding interpretation of state law, courts in this district have consistently dismissed PHRA claims filed prior to the expiration of the PHRC's one-year exclusive jurisdiction period. For example, in Lyons v. Springhouse Corp. the court dismissed a PHRA claim because the plaintiff had filed his civil action only six months after having filed his charges with the PHRC. Lyons, No. 92-6133, 1993 WL 69515, at *3 (E.D. Pa. March 10, 1993). In Nicholls v. Wildon Indus., Inc. the court dismissed the plaintiff's PHRA claim because he commenced a state-court suit before the required year had passed by filing a writ of summons in the Court of Common Pleas of Northampton County. Nichols, No. 98-6697, 1999 WL 1211656, at *4 (E.D. Pa. Dec. 10, 1999).

Here, Upper Darby cites Kozlowski, arguing that the court in that case not only dismissed the plaintiff's Title VII claim for failure to cooperate with the EEOC, but also dismissed the plaintiff's PHRA claim "because she brought suit within one year of the filing of the charge with the PHRC thereby infringing on the one-year conciliation period provided by statute." (Def.'s Mem. 6.) In Kozlowski, the plaintiff filed her initial civil complaint just over five months after filing her administrative complaint with the PHRC. 2000 WL 193502 at *4. The court granted the defendants' motion to dismiss for failure to exhaust administrative remedies, holding that, in presenting her PHRA claim to the court prior to the expiration of one year, she "refused to give the PHRC the opportunity to resolve her complaint through conciliation and failed even to make a good faith attempt to exhaust her remedies as required by the PHRA." Id.

Reilly does not dispute Upper Darby's argument on this issue.  It appears from the First Amended Complaint that Reilly's PHRA complaint was cross-filed with the PHRC when he filed his charge with the EEOC, in January 2009.  (First Am. Compl. ¶¶ 8, 35b2.)  Because Reilly filed his complaint in this court less than seven months later, on July 23, 2009, he failed to give the PHRC the proper time to resolve his complaint through conciliation and failed to exhaust his administrative remedies.  Accordingly, I will grant Upper Darby's motion as to Reilly's claim under the PHRA, Count II, without prejudice to Reilly's right to amend his complaint to reinstate his PHRA claim following the completion of the administrative process if the PHRA claim is not administratively resolved.

## IV. Conclusion

Upper Darby moved to dismiss Reilly's First Amended Complaint on the grounds that (1) he failed to file a timely charge of discrimination with the EEOC and has therefore failed to meet the prerequisites for filing suit under the ADA, and (2) he filed this suit before the one-year conciliation period under the PHRA expired.  Reilly argues that he has sufficiently pleaded that during the relevant time period he did not see in his workplace any notices of his rights under the ADA, and that therefore the court should toll the time in which he was required to file his EEOC charge.  I conclude that, based on the allegations in his First Amended Complaint, Reilly should have the opportunity to pursue discovery to demonstrate that he is entitled to the benefit of equitable tolling.  Accordingly, I will deny Upper Darby's motion as to Reilly's claim under the ADA (Count I).  Because, however, Reilly does not dispute that he failed to exhaust his administrative remedies for his claim under the PHRA (Count II), I will grant Upper Darby's motion as to the PHRA claim and will dismiss that count without prejudice to Reilly's right to reinstate it if his PHRA claim is not resolved after completion of the administrative process.